Braulio Sebastian Sanchez, Esquire
Arizona Bar No.: 028046
Sanchez Law Group P.L.L.C
340 W. 5th Street
Yuma, Arizona 85364
Tel: (928) 782-3110
Fax: (928) 569-0146
Email: staff@sanchezlawteam.com
Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISCTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>    vs.<br><br>Freddy Iram Zavala Velarde,<br><br>        Defendant | No. CR-24-01113-001-PHX-JJT<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

Freddy Iram Zavala Velarde submits the following memorandum in support of his sentencing recommendation. On or about April 29, 2025, Mr. Zavala entered into a plea agreement at the District Court in Yuma, AZ. The plea agreement stipulates to a sentence that shall NOT exceed the low end of the sentencing range as calculated under U.S.S.G. section 1B1.1(a). On July 17, 2025, a presentence report (PSR DRAFT) was filed in this matter. Doc. No. 46. The PSR (DRAFT) recommends a sentence of 36 months probation. PSR pgs. 14-15. In addition, Mr. Zavala respectfully requests the Court to follow the

recommendation of probation. Finally, in case this Honorable Court gives a term of imprisonment, Mr. Zavala requests this court to allow him to self-surrender. In support of this motion, Mr. Zavala submits the following memorandum.

# MEMORANDUM

## 1. Law:

Since the Booker decision, the overarching statutory charge for the District Court is to "impose a sentence sufficient, but not greater than necessary" to meet the statutory purposes of sentencing. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The District Court may not presume that the guideline range is reasonable, nor may the guideline range be given more or less weight than any other sentencing factor. "While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." *Id.*

One reason for the shift to a more discretionary independent analysis of each case is that the Guidelines are often too harsh, calling for sentences that are greater than necessary to effect the statutory goals of sentencing. *See United States v. Ranum*, 353 F.Supp.2d.984, note 1 (E.D. Wisc. 2005) (citing an article that quotes Justice Anthony Kennedy's statement in his August 9, 2003 address at the American Bar Association's Annual Meeting, that "our punishments [are] too severe, our sentences too long."). In fact, when it comes to the drug-trafficking Guidelines, the U.S. Supreme Court found that they were necessarily entitled to lesser weight than other sentencing factors because they are not based on "empirical data and national experience." *Kimbrough v. United States*, 552 U.S. 85 (2007). Rather, the drug-trafficking Guidelines are powerfully driven by the kind and quantity of drugs involved. Hence, the particular need in drug-trafficking cases to focus on an individualized assessment of each defendant in arriving at an appropriate sentence.

Mr. Zavala respectfully requests a sentence reflecting a downward variance from the applicable United States Sentencing Guideline range. In consideration of the now-advisory sentencing guidelines and factors set forth in Title 18 U.S.C. § 3553(a), further clarified in United States Supreme Court decisions, Mr. Zavala requests a downward variance in order to be eligible for probation. Mr. Zavala respectfully requests that this Court impose a sentence of probation based on the specific circumstances in this case.

## 2. Nature and Circumstances of the Offense

On or about May 17, 2023, ATF agents were contacted by Jones & Jones who notified Mr. Zavala had made a purchase for $4,267.41 (Scar 17 with magazine). PSR paragraph 10. Agents notified the defendant he was not under arrest. Mr. Zavala confirmed his address. When asked about the location of the firearms purchased, Mr. Zavala stated the firearms were stored at a friend's, Luis Gonzalez's, residence. However, he did not provide any further details for Gonzalez. Mr. Zavala was asked why he did not keep the firearms at his residence, and he replied he did not want to keep them at his mother's residence and used the firearms for target shooting. When confronted on his answers and border crossing history, he began sharing additional information. Mr. Zavala noted he received $4,000 from Gonzalez and Orlando Mendez to purchase the Scar 17. The defendant stated he would get a request either via text, phone or in person, what firearms or accessories to purchase and from which FFL's. He admitted to being paid between $100 to $150 per firearm purchased, but that he had not been compensated for the Scar. PSR paragraph 11. Mr. Zavala bought a total of 13 firearms.

Mr. Zavala bought the guns upon the request from Luis Gonzalez, whom he had met at San Luis High School when both were students. *See* PSR paragraph 12.

4

Through Luis Gonzalez, the defendant met Orlando Mendez at a party in Mexico. Mr. Zavala was offered by Luis Gonzalez between $100 to $150 per firearm purchased. Mr. Zavala's encounters with Luis Gonzalez occurred in San Luis, AZ. Also, he got paid in the United States by Luis Gonzalez, and he gave the guns to Luis in San Luis, AZ as well. Mr. Zavala did not ask as to the reason why they wanted the firearms nor why they could not buy them themselves. He was offered an opportunity to make some extra money, and he foolishly took it due to stupidity and immaturity. See Mr. Zavala's letter.

### 3. **History and Characteristics of the Defendant**

Mr. Zavala is 24 years old. He was born in Bakersfield, California and was fortunate enough to be raised by both, his mother and his father. Mr. Zavala has 3 siblings: Stephanie Zavala, 21, a schoolteacher residing in Tempe; Julio Cesar Zavala, 13, student; and Iram Zavala, 13, a student as well. PSR paragraph 39. He had a good childhood. He was raised free from abuse, neglect, and his parents were able to meet the needs of the family. He was primarily raised by his mother who worked and grandmother, Clorinda Perez. His father was not around much due to work but financially supported the family. PSR paragraph 39.

Mr. Zavala is currently attending college in Yuma, AZ at Arizona Western College. He is fully bilingual. Also, completed an Associates of Arts degree in 2023. He furthered his education beginning in January 2024, for a bachelor's degree in physical education. Mr. Zavala projects he will complete his education with Arizona Western College, in December 2025. PSR paragraph 45.

Mr. Zavala currently has two jobs. He works for ESI Education Services District 1, in Yuma, Arizona. He is a sixth grade substitute teacher, earning approximately $1,156, twice per month. In addition, he now works for Rural

Arizona Engagement.  He works as a lead supervisor in Yuma county and makes $60,000 a year.  See PSR paragraph 46 and Mr. Zavala's letter.

In addition, since his release he has remained compliant with his release conditions and has maintained stable housing.

Furthermore, Mr. Zavala has no criminal history.  As a matter of fact, this is his first criminal arrest and conviction.  Mr. Zavala understands that his actions of buying guns as a straw man were wrong and have the potential to destroy many people's lives.  The only reason he did it was a combination of both his friendship with Luis Gonzalez, whom he knows since high school, and also desire to make some extra money.  Mr. Zavala was trying to help his mother with their bills.  He is remorseful for his actions and accepts full responsibility.

Mr. Zavala now finds himself in a position he never expected to be in, facing potentially years in prison. This is not what he wants for his life. He wishes to be a productive member of society and to one day be able to look back on this conduct and see it as only a bump in the road of his long, successful, happy life.  As a matter of fact, ever since his release he has been living the life of a law abiding citizen in the same way he was prior to start buying guns as a straw man.

Additionally, he wants to be a good role model for his younger brother and someone he can look up to.  He does not want this bad decision to be an indication of who he is as a person. Mr. Zavala's family has been there every step of the way supporting him. Their love and support throughout this ordeal are far better indicators of his character than this offense.

As stated, this will be Mr. Zavala's first criminal conviction and, unfortunately, will follow and affect him for the rest of his life.  Mr. Zavala was used as a straw man because of his vulnerable state and close ties between the U.S.

and Mexico.  Since his release, Mr. Zavala has remained employed, and compliant with his release conditions.  He has no criminal history and has not engaged in further criminal conduct. Moreover, he is a low risk to both the community and to reoffend.  Furthermore, throughout the course of this case, this Court has granted eight (8) travelling permits to Mexico without any complains from the Probation department.  According to U.S. Probation Officer Karina Reyes, Mr. Zavala is doing very well under her supervision.  Counsel agrees with the probation department that "[a] term of imprisonment will result in the loss of stability in his employment and education goals. The overall goals of sentencing required by 18 U.S.C. § 3553 may be achieved by a sentence of probation, which would likely be sufficient but not greater than necessary to advance the goals of sentencing. Given these factors, a sentence of imprisonment may be greater than necessary for this individual, and a downward variance may be warranted." PSR paragraph 66.

**4.  <u>The need to afford adequate deterrence and protect the public</u>**

Mr. Zavala is a good person who made some very bad decisions which have drastically changed his life. However, he is not in need of a prison sentence to deter him from future criminal acts as he has no desire to recommit the instant offense, or any offense. His character is better explained by his almost impeccable criminal history.  Mr. Zavala would better benefit from probation as suggested by the PSR. See paragraph 66.  In addition, he would like the court to consider his remarkable performance while under the supervision of pre-trial services.  Mr. Zavala is not a danger to the community. He has made it clear that he wants to steer far from criminal activity in the future, and he has no desire to recommit the instant offense, or any offense.

### 5. Sentence to reflect seriousness of offense, promote respect for the law, and provide just punishment

Recent Supreme Court decisions have given back to the sentencing courts the discretion to fashion sentences appropriate to the circumstances of each individual. Mr. Zavala asks this Court to exercise its sentencing discretion in his favor.

Had not been for these series of episodes, where he bought firearms on behalf of someone else, his record would be impeccable. His performance while on pretrial release has been remarkable. In addition, he is attending college in pursuit of a bachelor's degree and now has two (2) jobs. As stated, the reason why he agreed to buy these weapons was because he knew Luis Gonzalez from high school and also because he wanted to feel more helpful, financially, towards his mother and younger brother.

Mr. Zavala is deeply remorse and he has showed he is worthy of being placed on probation based on his actions while this case has been pending. Furthermore, he accepted a plea agreement saving the government substantial time and resources. Mr. Zavala asks that the Court consider his personal circumstances as a whole; to include minimal criminal history, current employment status, remorse for his actions, and his exceptional pre-trial services performance. The defense believes that a downward variance is justified under these circumstances. Considering his exceptional performance while on pretrial services supervision, probation would be the right punishment in this case.

### CONCLUSION

Mr. Zavala respectfully submits that based upon all the §3553(a) factors, a sentence below the advisory guideline range is reasonable and just in this case.

This being his first conviction, a sentence to probation is justified. Additionally, the probation officer who prepared the presentence investigation report recommends a sentence below the advisory guideline range as appropriate. The defense agrees with the recommendation to probation and sincerely believes that probation is a sufficient and just sentence based on the circumstances.

Respectfully submitted: October 5, 2025.

*s/Braulio Sebastian Sanchez*
Braulio Sebastian Sanchez
Attorney for Defendant, Esq.

Copy of the foregoing transmitted
by ECF for filing October 5, 2025, to:

CLERK'S OFFICE
United States District Court

**Jacqueline Nan Schesnol**
US Attorney's Office - Phoenix, AZ
40 N Central Avenue, Suite 1800
Phoenix, AZ 85004-4408
602-514-7689
jacqueline.schesnol@usdoj.gov

Copy mailed to:

Freddy Iram Zavala Velarde
Defendant
PO BOX 14301
San Luis, AZ 85349

*/s/ Braulio Sebastian Sanchez*
Braulio Sebastian Sanchez